IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 8:19CV252 |
| ) | |
| v. ) | COMPLAINT AND DEMAND FOR JURY |
| ) | TRIAL |
| SCOTT FRAKES, Director of the ) | |
| Department of Corrections, In His ) | |
| Individual and Official Capacity; BRIAN ) | |
| GAGE, Former Warden of the Tecumseh ) | |
| State Correctional Institute, In His ) | |
| Individual Capacity; DIANE J. SABATKA- ) | |
| RINE, Former Director of Institutions, Now ) | |
| Chief of Operations, In Her Individual ) | |
| Capacity; CHRISTOPHER URLICH, ) | |
| Former Sergeant at Department of ) | |
| Corrections, was Acting Lieutenant of ) | |
| Tecumseh State Correctional Institute, In ) | |
| His Individual Capacity; CRYSTAL ) | |
| REMPEL, Former Corporal at Department ) | |
| of Corrections, was Acting Yard Supervisor ) | |
| of Tecumseh State Correctional Institute, In ) | |
| Her Individual Capacity; LUCAS ROEDE, ) | |
| Former Corrections Officer at Department ) | |
| of Corrections Tecumseh State Correctional ) | |
| Institute, In His Individual Capacity; ) | |
| SARAH GLASS, Former Unit Case Worker ) | |
| at Department of Corrections, Tecumseh ) | |
| State Correctional Institute, In Her ) | |
| Individual Capacity; SONNY STEELE, ) | |
| Former Unit Case Worker at Department of ) | |
| Corrections, Tecumseh State Correctional ) | |
| Institute, In His Individual Capacity, ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendants. ) | |

**COMES NOW** the Plaintiff, Jane Doe, and for her cause of action against individual defendants and defendant Frakes in his individual and official capacity, alleges and states as follows:

1. This is an action for injunctive and monetary relief against the Defendants for acts in violation of 42 U.S.C. § 1983, of Plaintiff's Eighth Amendment and Due Process Rights as guaranteed by the Fourteenth amendment to the US Constitution, and for costs and attorney's fees pursuant to 42 U.S.C. §1988.

2. Venue is proper in this court because the Plaintiff lives in Omaha Douglas County Nebraska

## PARTIES

3. Plaintiff is a resident of Douglas County Nebraska, having previously been an inmate at Tecumseh State Correctional Institute, currently incarcerated at Omaha Correctional Center. Plaintiff brings this action under an assumed name due to the fact that she is a victim of sexual assault.

4. Defendant Scott Frakes is the Director of the Department of Corrections and was at relevant times during the facts which occurred as alleged herein. Defendant Frakes is sued in his individual capacity. Defendant Frakes is also sued in his official capacity only for injunctive and other relief.

5. Defendant Brian Gage was the Warden of Tecumseh State Correctional Institute at relevant times during the facts which occurred as alleged herein. Defendant Gage is sued in his individual capacity

6. Defendant Diane J. Sabatka-Rine was the Deputy Director of Institutions and is now the Chief of Operations. Defendant Sabatka-Rine is sued in her individual capacity.

7. Defendant Christopher Ulrich was a sergeant at the Department of corrections but was the acting Lieutenant of Tecumseh State Correctional Institute and was at relevant times during the facts which occurred as alleged herein. Defendant Ulrich is sued in his individual capacity.

8. Defendant Crystal Rempel was a corporal at the Department of corrections but was the acting Yard Supervisor of Tecumseh State Correctional Institute at all at relevant times during the facts which occurred as alleged herein. Defendant Rempel is sued in her individual capacity.

9. Defendant Lucas Roede was a corrections officer at the Department of Tecumseh State Correctional Institute at all at relevant times during the facts which occurred as alleged herein. Defendant Roede was operating as control center for housing unit 2 AB. Defendant Roede is sued in his individual capacity.

10. Defendant Sarah Glass was a unit case worker at the Department of Corrections, Tecumseh State Correctional Institute at all at relevant times during

the facts which occurred as alleged herein.  Defendant Glass was operating as unit case worker assigned to housing unit 2 AB.  Defendant Glass is sued in her individual capacity.

11.  Defendant Sonny Steele was a unit case worker at the Department of Corrections, Tecumseh State Correctional Institute at all at relevant times during the facts which occurred as alleged herein.  Defendant Steele was operating as unit case worker assigned as utility to housing unit 2.  Defendant Steele is sued in his individual capacity.

## FACTS

12.  Plaintiff is a transgender individual who was transitioning to be a woman at the time of her conviction.

13.  Previous to her incarceration Plaintiff was diagnosed with Gender Identity Disorder, which is now referred to as Gender Dysphoria.

14.  Gender Dysphoria is a medical condition experienced by transgender individuals in which the incongruity between their assigned gender and their actual gender identity is so severe that it impairs the individual's ability to function.

15.  Plaintiff was convicted of forgery in the 2nd degree on July 8, 2013, for writing a fraudulent check to purchase a golden retriever dog.  Plaintiff was given a habitual criminal sentence enhancement adding a mandatory minimum of ten years to her sentence.

16. Defendant Frakes in his official capacity as Director of Department of Corrections was notified of Plaintiff's medical condition when she was sentenced and was being evaluated for classification and placement at the Nebraska Department of Corrections Diagnostic and Evaluation center in 2013.

17. At the time of the Plaintiff's sentencing, and at least through the summer of 2016, the Nebraska Department of Corrections had an inmate classification policy which required an override to maximum security classification if an inmate's sentence was for longer than 8 years irrespective of the inmate's strengths, weaknesses, basic needs, perceived dangerousness, estimated escape potential and general correctional needs.

18. As a result of the Plaintiff's length of sentence, she was assigned to maximum security classification and placed at Tecumseh.

19. Tecumseh State Correctional Institution (TSCI), located just outside Tecumseh, Nebraska, is a 960 bed facility designated to hold death row, maximum and medium custody inmates in four separate living units.

20. Throughout Plaintiff's incarceration at Tecumseh she was placed as a cellmate with persons who were convicted of violent crimes including rape and murder.

21. On May 10, 2015, Plaintiff was an inmate at Tecumseh State Correctional Institute assigned to Housing unit 2A.

22. On May 10, 2015 Defendant Frakes in his official capacity through the department of corrections was charged with the safekeeping of approximately 1,025 inmates at Tecumseh State Correctional Institute;

23. Tecumseh State Correctional Institute has not been properly staffed throughout the existence of the facility and on May 10, 2015 the total number of staff on duty on 2nd Shift (1400-2200), was 57, of those; six were on "voluntary overtime". Defendant Director Frakes and Defendant Gage were aware of the staffing concerns at Tecumseh, yet continued to operate the facility despite proper staffing.

24. Correctional staff members take what is labeled "voluntary overtime" to avoid being required to be assigned mandatory overtime. Defendant Director Frakes and Defendant Gage were aware of the overtime situation however continued operations despite the concern.

25. The minimum staffing requirement for that shift that day was identified as 61, though the Department of Corrections indicates that they had closed certain programs down to cope with the lowered staff census. Defendant Director Frakes, Defendant Gage, and Defendant Ulrich were aware of the lack of qualified staff but continued operations despite the lack of staff.

26. Staff members at Tecumseh State Correctional Institute have high turnover, and on May 10, 2015, 35 percent of the staff members had two years or

less experience. Defendant Director Frakes and Defendant Gage were aware of the turnover rate and the lack of experience, yet they continued to operate despite the turnover and lack of qualified staff.

27. As early as 2004, the employees of Tecumseh State Correctional Institute filed a grievance that the facility was under-staffed, that there is a "lack of effective administration" at TSCI, which had caused an "extremely unsafe work-place," and that staff safety at the facility has "become an afterthought."

28. The work environment for staff members has not markedly improved by May 10, 2015, and concerns still remain to the present day.

29. Additionally, the inmate population is over the design capacity of the facility;

30. The facility had been designed for 960 inmates but on May 10, 2015 the population as 1025;

31. Over the years since the Tecumseh Prison was built it had been modified from its original design and additional walls were built using materials that were not fire resistant and were not appropriate for a medium/maximum security prison;

32. On May 10, 2015, on or about 2:25 pm, Defendant Crystal Rempel called for the release of inmates from housing units 1, 2 and 3, from their housing units with the intent that they would go to the med-line and return to their housing

units;

33. Calling for the release of the inmates from all of the housing units at the same time was against the policies and procedures as written and it was against the custom and practice of the facility.

34. Calling for the number of inmates to be released all at the same time showed a deliberate indifference to the safety of the inmates because it exposed inmates such as Plaintiff to serious risk of harm, which harm did come to her.

35. Plaintiff was a peculiar risk of harm due to the fact that she was a woman living in a men's maximum security prison and her status was apparent and was known by all individual Defendants and Defendant Frakes in his official capacity.

36. Inmates other than the Plaintiff started a riot refusing to return to their housing units and later refusing to follow verbal commands.

37. Soon after the riot commenced Defendant Ulrich instructed all available staff members to leave their posts and to go to the gun tower or other secure area's and leave the inmates unsecured.

38. Defendants, Roede, Glass, and Steele failed to take reasonable control of the inmates and fled to housing unit 2CD leaving the inmates including the Plaintiff unprotected and to defend themselves without proper resources and despite verbal and physical threats;

39. The inmates were left to fend for themselves while the staff left their posts and ran for safety;

40. In May of 2015 Plaintiff was housed in housing unit 2 A.

41. At the inception of the riot, inmates covered the control center windows which indicated the intent to hide what they were doing. Defendants Roede, Glass and Steele were assigned to the housing unit and personally observed the inmates covering the control center windows, however Defedants, Roede, Glass, and Steele each failed to take proper control of the inmates and allowed them to continue in their riotous behavior.

42. Defendant's Roede, Glass and Steele reported concerns to Defendant Ulrich and/or Defendant Ulrich was aware of the activity due to monitoring the camera's in central control, however nothing was done to take control of housing unit 2 for 16-18 hours after the riot began.

43. The Defendant Frakes in his official capacity as Director of the Department of Corrections had policies and procedures for evacuation of the housing units, however despite housing unit 2 being on fire it was not evacuated pursuant to the policies or procedures.

44. Defendant Frakes in his official capacity as Director of Department of Corrections had policies and procedures mandating security is the responsibility of all staff irrespective of job classification, however Defendant Frakes, Gage, Ulrich,

Remple, Roede, Glass, and Steele failed to maintain the security of the inmates at Tecumseh on May 10 and 11, 2015.

45.    The Critical Incident Review Team Report for the Department of Corrections reflects the staff members were "rescued" as follows:

1. At 1624 hours, 1 staff rescued from the gym.

2. At 1804 hours, 5 staff rescued from Unit 2.

3. At 1813 hours, 1 volunteer and 1 staff rescued from religious services.

4. At 2030 hours, 3 staff rescued from Unit 3.

5. At 2035 hours, 9 staff rescued from the tower (four remained for incident observation).

46.    Defendant Frakes, Gage, Ulrich, Remple, Roede, Glass and Steele failed to rescue the Plaintiff despite the fact that her housing unit was on fire, and the Defendants did not timely call first responders to the scene and once they arrived at the scene the individual defendants Frakes, Gage, and Ulrich did not permit them to enter the premises to maintain safety of the Plaintiff and other inmates.

47.    After the windows were obscured and fires were started in the housing unit 2 A, inmates tore a hole into the wall so that they could go into housing unit 2 B from 2 A.

48.    Plaintiff was grabbed by inmates, assaulted, and threatened and taken

through the hole in the wall into Housing unit 2B.

49. Plaintiff was placed in a cell which was very close to a room where two other inmates were being tortured and ultimately killed.

50. During the riot and while in the cell where she had been placed by the inmates, Plaintiff was raped by multiple prisoners and was in fear that she would be killed.

51. Defendant Frakes, Gage, Ulrich, Remple, Roede, Glass, and Steele failed to take reasonable control of the inmates and remained in areas inaccessible to inmates leaving the inmates including the Plaintiff unprotected and to defend themselves without proper resources and despite verbal and physical threats.

52. By refusing to protect Plaintiff from being assaulted, threatened, and raped by several other inmates, Defendant showed a deliberate indifference to the Plaintiff's rights.

53. After the sexual assault Plaintiff was questioned by members of the prison about whether she suffered any injuries, however Plaintiff was not at liberty to say that she had due to the fact that Defendants Frakes, Gage, Ulrich, Remple, Roede, Glass, and Steele, and each of them provided no security for her personal safety. Plaintiff had no reasonable expectation she would be safe if she reported the assaults and rape.

54. A year and a few months following the riot, on September 3, 2016 the

Plaintiff was transferred to Omaha Correctional Center. It was only after this transfer that Plaintiff felt safe enough to divulge her assault which had occurred during the riot.

## CAUSE OF ACTION

55. Plaintiff incorporates all allegations in paragraphs one through 54 as though fully set out herein verbatim.

56. At all times, the individual Defendants were acting in their individual capacity, and were acting under color of state law.

57. As set forth herein, circumstances suggest that the Defendants knew of, and disregarded, an excessive and documented risk to the Plaintiff's safety from other prisoners.

58. As set forth herein, Defendant failed to protect the Plaintiff from the serious, unnecessary, and wanton infliction of pain at the hands of other prisoners.

59. The Eighth Amendment, as applied to prisoners through the Due Process Clause of the 14th Amendment, requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody.

60. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer hardship, great emotional distress, humiliation, embarrassment, inconvenience, loss of enjoyment of life which entitles her to compensatory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this court to assume jurisdiction over this case and:

a) Award damages to compensate Plaintiff for pain and suffering, inconvenience, emotional distress, and humiliation;

b) Assess punitive damages against the individual Defendants to the maximum extent allowed by law;

c) An Injunction requiring the State Defendant provide correctional facilities which comply with nationally mandated standards regarding capacity;

d) Award the Plaintiff fair and reasonable attorney fees herein incurred, and

e) Award the Plaintiff such further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests that a Jury Trial be held in Omaha, Nebraska.

**JANE DOE, Plaintiff**,

By_Joy Shiffermiller_____
Joy Shiffermiller, #18164
Abby Osborn, #24527
Shiffermiller Law Office, P.C., L.L.O.

        1002 G Street
        Lincoln, Nebraska 68508
        402-484-7700
        402-484-7714 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11st day of February, 2020, I served the above and forgoing Complaint via email to the following:

Phoebe L Gydesen
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, Nebraska 68509
phoebe.gydesen@nebraska.gov

Renee Eveland
Cline Williams Wright Johnson &
Oldfather, L.L.P.
233 South 13th Street, #1900
Lincoln, Nebraska 68508

        /s/ Joy Shiffermiller_____
           Joy Shiffermiller